Case number 14-2549. United States of America v. Samuel Dwayne Johnson Jr. Argument not to exceed 15 minutes per side. Mr. Goetz, you may proceed for the appellate. May it please the Court, Andrew Goetz for the United States. With the Court's permission, I would like to reserve four minutes for rebuttal. In overruling the Magistrate's report and the District Judge here made two significant and related legal errors concerning the moment when the defendant was seized for purposes of the Fourth Amendment. First, the District Judge relied on the defendant's subjective intent rather than focusing on the moment when the defendant's objective conduct demonstrated to a reasonable officer that the defendant had submitted to authority. Second, and relatedly, the District Judge misapplied the Supreme Court's decision in Houdari D and held that the moment of seizure occurred when the officers activated their emergency lights rather than when the defendant actually submitted later at the gas station. Based on those two legal errors, the District Judge incorrectly decided that the defendant was seized before he ran the stop sign at Wisner and Myrtle. That decision should be reversed. Turning to the first point, the Supreme Court has emphasized time and again that an objective test, not a subjective test, governs Fourth Amendment inquiries. In United States v. Smith, a case we cited I believe in both of our briefs, this court applied an objective test to the very question at issue here, which is the moment when the defendant submitted to authority. And this court held in Smith that regardless of the defendant's subjective intent, and I believe that's exactly the phrase the court used or close to it, reasonable officers would not have viewed the defendant's conduct as submitting to authority. Other courts of appeals unanimously that have considered this question have likewise held that an objective test governs the moment of seizure, governs the determination of when the defendant has submitted to authority. Contrary to those cases, the District Court's decision here pinpointed the moment of seizure based on the defendant's subjective intent. The District Judge held that the defendant had submitted to authority based on the defendant's subjective intent to stop eventually once he reached a well-lit area. Subjective intent doesn't matter under the Fourth Amendment. What matters is objective conduct. And objective conduct here never occurred until the gas station. The defendant continued driving, he ran a stop sign, turned right, continued driving some more, and then ultimately pulled over at the gas station. That was the first point at which his objective conduct demonstrated submission. And that's the standard here is actual submission to authority. So what about this whole situation of when can you have submission to authority short of an actual stop? I know there's some reference in the briefs to a motorist who sees an officer with the lights activated, but the motorist is in, say, a construction zone or something of that nature. And perhaps that motorist, maybe you can see, that motorist is seized at the point the lights are on and the motorist appears to be submitting to authority, even though the motorist has not actually stopped. So I guess my question is, do you always have to have an actual stop for submission of authority? Or can there be other indicators that would short of a stop? We're not asking the court to go that far and say that a stop is always required. What would be required, and I believe your Honor is referring to the hypothetical we gave in our reply brief, what would be required is some objective conduct that unambiguously demonstrates to a reasonable officer, keep in mind it's a reasonable officer standard here, that the defendant has submitted to authority. So in the example we gave, the defendant was in the middle of a construction zone and he was being pulled over when there was no safe place to pull over. And in the example we gave, the defendant unambiguously submitted, slowed down, turned on his hazard lights, didn't disobey the traffic laws. In that circumstance, it would be a much more difficult question, because there, unlike here, we have objective conduct that would demonstrate to the officers that the defendant had submitted. Contrast that with what happened here. At 2 a.m., it is understandable that the defendant, and frankly anyone, would want to reach a well-lit area. But from the officer's perspective, they don't know that. They can't know what's inside his head. All they can see is his conduct. And his conduct here provided no indication that he was actually going to commit a crime. So the question is, from the officer's perspective, he doesn't know what the defendant is going to do, or what the defendant is doing in the meantime before he submits. The defendant could be destroying evidence, destroying text messages on his phone. He could be hiding evidence, putting a gun near his feet, which is where the gun was found here. He could just be in the midst of a moment of indecision before he decides what to do. But from the officer's perspective... But counsel, doesn't the court have to, in looking at these objective factors, obviously if in this circumstance the defendant sped up, that would be an indication that he's not submitting. But if the defendant, as you said before, if the defendant slows down, that's a factor that the court could consider. But if the defendant just kept at the same pace, couldn't that be an objective factor that shows submission or intent to submit, given the circumstances that existed at the time? No, Judge Donnell. We would disagree with that. It's tough to imagine how continuing at the same pace when the officer turns on the lights would show submission. It would The standard is whether the defendant has submitted. And there's a range of conduct between fleeing on the one hand and submission on the other. There are a group of cases, and we've cited most of them in our brief, where the defendant was not fleeing, but also not submitting. And in those cases, unanimously, the courts have held that the defendant was not submitted. And Judge Donnell, maybe this answers your question a little bit better. Looking at the court's case in Zabawa, it's a case we cited in our brief where the defendant veered across a fog line, and the officer turned on his lights thinking the defendant was drunk. And then the defendant veered across the fog line again. There's no indication in the record the defendant did anything but continue driving. And yet the defendant argued on appeal that, in that case, the officer couldn't consider the second time he veered. This court rejected that argument, held that it was, quote-unquote, without merit, and said that a motorist who continues to drive, and I don't believe the court said continues to drive faster, I think it said continues to drive, is not seized within the meaning of the Fourth Amendment. You mentioned a range of things that, as far as the officer's doing, such as destroying evidence, deleting text messages, etc., etc., etc. But does the significance of the initiating traffic violation, should it make a difference in the court's determination regarding events following? In other words, what was the traffic offense that brought the officer's attention to the driver? Should that make a difference? I mean, if it's a broken taillight as opposed to speeding or weaving, does that make a difference? I think there would be closer cases, Judge Donald, where, and Justice Stevens gave one in the dissent in Houdari D., where the officer turns on his light, and as the car is slowing down, the officer notices that the license plate has expired. That would be a much more difficult case here, because the officer noticed it only after the defendant had engaged in some sort of objective conduct demonstrating submission. What makes this case easier, from the government's perspective at least, is there was no objective conduct. So, the moment of seizure occurs at that time of objective conduct at the gas station, and the officers can consider any conduct in the meantime as a basis for the stop. And that follows from Houdari D., getting to my second point, it follows from Houdari D., because the Supreme Court held in Houdari D. that the Fourth Amendment does not apply to attempted seizures. It only applies at the moment of seizure. If the court looks at footnote two, the court actually rejected applying the Fourth Amendment to attempted seizures. Use those exact words. Applying the Fourth Amendment to turning on the lights, regardless of the motivation for turning on the lights, would mean applying the Fourth Amendment to attempted seizures until the defendant actually is seized at the gas station. That's something the Supreme Court adopted here. Do we look at all at the subjective view of the officers in this situation? And I ask because I think that Sergeant or Trooper Ross testified at the suppression hearing that by the time Mr. Johnson pulled in the BP gas station, he, Ross, did not believe that Johnson was attempting to flee. Now, would he believe between the time the lights were activated and that very point, I guess I don't know. But at least at that point, do we look at his perspective at all? I guess there are two answers to your question. The first answer is no, only objective conduct matters on the Fourth Amendment. The second answer, and I believe Your Honor made reference to it, the defendant here, once he pulled into the gas station, that's when the officer said he didn't think the defendant was going to flee, not at any point before he ran the stop sign. I see my red light is on. I have a question before you sit down. I was a little surprised at the situation here. As I understand it, these officers, I don't know whether the defendant did or not, but the officers testified at a suppression hearing in front of the magistrate judge? That's correct. And they did not testify in front of the district court? That is also correct. So I understand that the district judge is the district court, but the finding of credibility that the magistrate judge made is the district court, not having heard the witnesses, free not only to reject the recommendation of the magistrate judge, but to reject the findings of credibility and instead determine it on a cold record? I know we're not allowed to do that. I'm just wondering if there's any authority for the district court doing that. Again, there are two answers to your question. One, that is what the district court did. It is unusual for a district judge to reject credibility findings as opposed to fact findings more generally without hearing live testimony. Credibility usually involves some sort of evaluation of demeanor, tone, things that happened during live testimony. The second answer to your question is that the authority is actually all over the place. There's a Supreme Court case from, I believe, around 1980, Raddatz, that suggested in DICTA that that would be improper to do that. This court actually appears to have gone the other way in some unpublished cases since then. Also followed Raddatz in one other unpublished case, and then in a published case said it was an open question. Oh, an open question. We have, I would say, intentionally chosen not to raise that here in the Court of Appeals. It presents sort of a dicey legal issue given the split in unpublished authority, and we believe the clearest way and the way we've asked this court to resolve this case would be on the basic legal issue of the objective standard. Thank you. Thank you. You didn't miss it, in other words. No, we didn't. Mr. Martin. Thank you. Good morning, Your Honors. I'm Ben Martin from the Federal Defender's Office in Detroit on behalf of Samuel Johnson. Mr. Johnson was seized, in our opinion, returning from work in an early morning on a dark street in Flint, Michigan, without probable cause or reasonable suspicion before officers activated their lights. The government and the defense agree on what constitutes a seizure, that there must be, one, a show of authority, and two, that the person being seized has to actually submit. I'd also note that the government does not contest that the show of authority was made here when the officers pulled up behind Mr. Johnson and activated their lights, nor for purposes of this appeal have they contested the district court's finding that the officers lacked justification to stop Mr. Johnson before they turned on their lights. I guess at this point I'd like to just break for a minute and address the magistrate judge versus the district judge question, and note that I think in particular on this record the district court was looking at inconsistencies in testimony when she evaluated why she thought that the credibility in this court was lacking. So it wasn't necessarily based on officer demeanor that didn't figure into her analysis. She was looking at the cold record, as you call it, and saying that there are inconsistencies in this record between the officers. Yeah, but I have to say, if I was looking at that cold record, I would have thought the guy behind the wheel was paying attention to exactly what was going on, and the guy who's sitting in the seat next to him doesn't have a clear memory of whether they made a U-turn or not. So I wonder if that kind of inconsistency is really enough to say I'm going to disbelieve the officers when they say he rolled through a stop sign up there at the corner of, I've forgotten, I thought I would never forget, Wisner and something that's north of Wisner. The trooper was the first one, I believe. Yes. And I think it is enough to say that, especially because there were two witnesses here, the defendant and the second trooper, that agreed their testimonies lined up in regards to what happened at that first stop sign. Moving on, I think the real question here is that of submission, which under Brendelin is a fact-intensive inquiry, so that someone who's sitting may submit simply by continuing to sit, whereas someone who's fleeing may not submit until they're actually physically overpowered. I don't think there's any factual dispute that Mr. Johnson wasn't fleeing. The district court found that. I don't think the officer's testimony is inconsistent with that at all. But he wasn't stopping either. No. And I think that that doesn't change. The result doesn't undermine the district court's decision. Well, what happens when he runs the second stop sign? I think he had already submitted, Your Honor, to the officer. So he gets a freebie down at the end of the block? What if he got to the end of the block, and instead of rolling through the stop sign, he pulled the gun out and shot at the officers behind him and killed one of them? Is that a freebie because he was? No, and I think that that would be inconsistent with him having submitted. Here, I think that his actions were completely consistent with him having submitted to the show of authority because he testified as he turned on his blinker. I don't think there's any dispute on that either as he approaches this stop. And then the officer said that they pull up behind him on a block that's a normal city block, and I think there's a map that's in the brief. Actually, that's not a normal city block. Are you talking about Wisner? I'm talking about Wisner. That thing is three blocks long because it's at the edge of a large park, and it corresponds. We've looked at Google, I will confess to you. As I did, yeah. And I don't know whether the Google was in the record or not. It's in my notes. But that street is three blocks long. So let's say they turned on the lights halfway down the street. That's a block and a half right there that he just kept going. I don't think it's completely clear where exactly they were on Wisner. He talks about being near the auto zone that's about midway through there. But the officer actually, Oscar Ross, testified that the next street that he turns onto, Myrtle, is half of a normal city block. And it's there that he turns around the corner and proceeds very quickly and directly to the first pump in this gas station. I think that all of those actions, objectively, are consistent with him having actually submitted to that show of authority. So I think that's a different thing. Isn't it sort of interesting that he pulls up to the gas pump and not just pulls in and stops because he knows he's being followed? What about that? The fact that he stops at the pump. Yeah. I'm just here getting gas. Oh, whether he was trying to somehow. I don't know exactly how this gas station, I haven't been to the actual gas station to see how it's situated. I assume that that was because he. Okay, I cheated. I looked at Google and you can now get those satellite pictures that show a big parking lot before you get to the pumps. His testimony was that he wanted to be somewhere that was brightly lit. And usually at these gas stations, there's overhead lights directly above where you're getting gas. And I think that that's consistent with the officers believing he wasn't fleeing when he got to that gas station, which would distinguish it, I would note, from the Randolph case where there was someone who pulled into a hotel parking lot and they drive across a lot, around the side, nearly halfway across the rear of the hotel before coming to a stop. I think that does look like someone's not submitting. That's not consistent with submission because it looks like they're trying to evade the officers. That's very different than what Mr. Johnson did. Don't we talk about slippery slope? If we're going to consider, again, what he is contemplating, what Mr. Johnson is contemplating, that he wants to be in a well-lit area as opposed to the darker areas of Wisner, then that opens up a can of worms in terms of drivers who decide they want to stop in any place of their choice, whether it's well-lit or near where their friends are, six blocks down the street, or whatever it may be. Right. I don't think it opens up a can of worms. I think this is the same inquiry that comes up whenever there's a factually intensive question that needs to be answered and the district courts are well-suited to evaluate whether someone was actually submitting or not. It's a line that we draw even when we say if someone comes to a complete stop, they can always pull away from the officers. There's always some sort of element of trying to anticipate what this person is going to do. And I think it is fair to say that he actually submitted if his actions are consistent with that after the officers turned on their lights. I didn't see anything in the record that indicated that Mr. Johnson had slowed down his car. I saw that he had not sped up at all. Is there any evidence in the record that shows that he, in terms of submitting, that he actually slowed down more? Because he clearly had a fair amount of space on Wistner, between Wistner and turning right on Myrtle to stop on Wistner. Right. And so is there just any indication that... I don't know how an officer would know he was submitting to authority when the lights first go on somewhere near the auto zone, Mr. Johnson sees them somewhere near the beaver's business or whatever, and there's still a lot of street left, as Judge Daughtry said, between there and Myrtle. I mean, it's just... I'm just wondering what other objective criteria you can cite other than, you know, Mr. Johnson sort of rolling through the stop sign and pulling in the... And if I could just add on to Chief Judge Cole's question, the question was, did he slow down to give any indication he was submitting? I mean, did he turn on the hazard lights? What can you tell us that he did objectively that would put the officers on notice that he was submitting to authority? Yes, I don't think there's anything in this record to indicate whether he was slowing down or not. It's clear he did not speed up. And he must have eventually slowed down because he stopped at the gas station. But whether he slowed down before he got to that stop sign, I think is unclear. I can say that... So from an officer's perspective, how would an officer know that he, Mr. Johnson, is not ready to just take off again? I mean, he could have pulled over on Wisner. There's space there. This is not the construction zone situation. There's plenty of space for him to pull over there. I know he's not happy about the dark area, but he could have taken off in headlong flight at any point before pulling into the BP. I'd like to point to two things. One is that he does testify that he turned on his blinker at this stop sign. Well, that's... That's the right blinker. Yeah, that's what he's supposed to do. Not the hazard lights. Not the hazard lights. I think that the law doesn't support that burdensome of a requirement of turning on the hazard lights. He also testified that it was all you could see was these bright lights at the gas station, and that's what's in his field of view. There's no street lights on this car. Excuse me, on this street is what Mr. Johnson testified, and that as he's heading down, he's going straight on this road. All he can see is... There are no street lights on Wisner? His testimony was that there was not street lights that at least were on. At 3 o'clock in the morning? At this time during the day. Or during the night, excuse me. That this was a dark street that he was on, and that all he could see was this gas station. And I think that if there was a chance, he could have kept going down this dark street if he was really trying to evade the officers. But instead what he does is he turns on his blinker and signals that he's heading right towards this very brightly lit gas station. I don't know what equipment the officers had or what their car was like, but most officers have... They've got headlights on the car, they often have bright lights that can shine on objects that are in front of them, they've got flashlights. I mean, there's plenty of ways in which officers provide light to a situation where they have stopped a vehicle. Mr. Johnson testified that his concern was about police brutality, and also on the other side of this road on Wisner is what was a busier road, which is the Clio Road, and that he wanted to be at this gas station because then he could be in the view, not only of the bright lights, but of a busy road where there were other cars going by during that time. And I would note that, as you noted, because there's these spotlights and things, that there's this Watkins case that's discussed heavily in the briefs where it initially looks similar to this case because there's an explanation of a well-lit... But there's some critical distinctions in that case. In that case, there's a car that's going 15 miles an hour in a 25-mile-an-hour zone, and it's a high-crime area, and the officers come up behind this person and they shine their spotlight first on the driver, and the driver keeps going for a block or two at this 15 miles an hour. Then the officers turn on the lights on top and the motorist continues driving for a block and a half more even after that before reaching a gas station. And in that case, this court noted also that the well-lit area defense had only been raised in an appellate brief and not at a deposition that had been taken earlier in the case because it was a civil rights case. Here, Mr. Johnson has been consistent the entire time saying that this is why he was headed towards this gas station when he had submitted to the officers. I'd also note that in that Watkins case, as in some of these other cases, they all hinged on reasonable suspicion of criminal activity, whereas this case, the officers say that the only basis they were pulling Mr. Johnson over was because of a civil infraction. And so that was the case actually in the Zabawa case that was discussed where there was a motorist who had a high blood alcohol content and was swerving across the fog line. And after the police activated their lights, he continued to swerve across the fog line. There's this continuing offense almost that keeps going where their reasonable suspicion keeps mounting and the court said, well, you can look at that, the fact that he just continues to swerve across the fog line. Well, this guy continued to roll through stop signs. Well, according to the district court's finding, he did not run through any stop sign before the cops turned on the lights. Well, okay. At least one judge has found that he did, in fact, roll through the first stop sign up there at Wiesner and Cooper. And the truth of the matter is, if he had stopped on this dark street without rolling through the second stop sign, they might well have come up on him and said, did you realize you just rolled through a stop sign giving him a warning and on that dark street they never would have seen the gun? I mean, he was not acting in his own best interest when he rolled around there into a well-lit area. Sorry, but… You can say that now. Yeah. So, you know, to me the fact that he did it again at the end of Wiesner, it feeds into the fact that they had some reasonable reason to stop him. And I know you can tell me that the district judge found that he didn't roll through that. But why in the world were they after him if he didn't? The district court noted that this was actually, they were making 30 stops a night. This was part of this proactive patrol is what they called it. So they're just constantly stopping vehicles looking for evidence of other criminal activity. I will leave that where it is. And I think there were some serious inconsistencies between these officer's testimonies, and you can look at the record and see these. We have, and I will again, I promise you. Thank you, Judge. And I think that one of the most important findings that the district court made was that the district court said that, and I don't think it's really inconsistent with the officer's, that Mr. Johnson was pulling over in response to the officer's show of authority after the lights came on. And I would ask this court to defer to that factual finding, find that he was seized because of that submission, and to affirm the suppression of the evidence in this case. Thank you. Thank you, Mr. Martin. Mr. Goetz, rebuttal. Thank you, Your Honors. Still today, in his argument, the defendant can point to no objective conduct demonstrating to a reasonable officer that he had submitted to authority. That is the central inquiry here, and that should end the inquiry and result in the case being reversed and sent back to the district court. Judge Cole, or Chief Judge Cole, you made the, you asked the question about the slippery slope, the problem with the defendant's argument on the slippery slope. That is a problem. And admittedly, this case here is not the most egregious case from the government's perspective. Running a stop sign is not the most egregious violation you can imagine. The problem for the defendant is that his reasoning would apply to a whole host of other circumstances where the conduct would be much worse, whether it's running straight through the stop sign at a higher speed, whether it's throwing a gun or drugs out the window, which we frequently see in our cases. His reasoning would encompass not just this case. It would encompass those other cases, too. Further, even in this case, I know the defendant tries to downplay running through a stop sign. This was a busy time of night, even if he had veered off that initial street. What if there was another car in the intersection? It would be news to that driver that running the stop sign wasn't a big deal as he's getting T-boned by the defendant. So, yes, it may have been reasonable for someone to think to themselves, I'll keep driving to a welded area. It may still be reasonable. But that doesn't mean that the defendant is seized in the meantime until he actually stops, whether that's understandable or not understandable. Objective conduct matters, and only when the defendant submits is the defendant seized. It also doesn't mean that regardless of how understandable it is, the defendant can break whatever traffic laws he chooses or do anything else he chooses in the meantime with immunity. For these reasons, unless the court has any further questions, the government would ask that the district court's order be reversed. Apparently there are no further questions, so thank you, Mr. Goetz and Mr. Martin, for your arguments today. The case will be submitted, and that will complete.